UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x

HSAINGTAK TONG,

                                                        Plaintiff,

            -against-

THE CITY OF NEW YORK, POLICE OFFICER
VINCENT GUIGA, POLICE OFFICER BRIAN CHECO,
SERGEANT JUAN MORENO, SERGEANT JOSEPH
WHITE, POLICE OFFICER GIANCARLO ALIA,
POLICE OFFICER SHERIF BAKSH, POLICE OFFICER
JONATHAN WALLY, POLICE OFFICER FRANKIE
CRUZ, POLICE OFFICER MARCOS GONZALEZ,
SERGEANT GERMAN GARCIA.

                                                        Defendant.

------------------------------------------------------------------x

SECOND AMENDED
COMPLAINT

12 Civ. 9293 (WHP)

JURY TRIAL DEMANDED

## NATURE OF THE ACTION

1. This is an action to recover money damages arising out of the violation of plaintiff's rights under the Constitution of the United States.

## JURISDICTION AND VENUE

2. This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States.

3. The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331, 1343, and 1367(a).

4. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391 (b) and (c).

## JURY DEMAND

5. Plaintiff demands a trial by jury in this action.

**PARTIES**

6. Plaintiff Hsaingtak Tong ("Plaintiff" or "Mr. Tong"), an African-American male, is a resident of the County of Bronx, City of New York.

7. Defendant The City of New York is a municipal organization organized under the laws of the State of New York.

8. Defendant The City of New York operates the New York City Police Department ("NYPD"), a department or agency of defendant The City of New York.

9. The NYPD is responsible for the appointment, training, supervision, promotion, and discipline of police officers and supervisory police officers, including the individually named defendants herein.

10. At all times relevant herein, Defendant Police Officer Brian Checo ("Checo") was an officer, employee, and agent of Defendant The City of New York.

11. At all times relevant herein, Defendant Checo was acting within the scope of his employment with Defendant The City of New York.

12. At all times relevant herein, Defendant Checo was acting under color of state law.

13. Defendant Checo is sued in his individual and official capacities.

14. At all times relevant herein, Defendant Sergeant Juan Moreno ("Moreno") was an officer, employee, and agent of Defendant The City of New York.

15. At all times relevant herein, Defendant Moreno was acting within the scope of his employment with Defendant The City of New York.

16. At all times relevant herein, Defendant Moreno was acting under color of state law.

17. Defendant Moreno is sued in his individual and official capacities.

18. At all times relevant herein, Defendant Police Officer Vincent Guiga ("Guiga") was an officer, employee, and agent of Defendant The City of New York.

19. At all times relevant herein, Defendant Guiga was acting within the scope of his employment with Defendant The City of New York.

20. At all times relevant herein, Defendant Guiga was acting under color of state law.

21. Defendant Guiga is sued in his individual and official capacities.

22. At all times relevant herein, Defendant Sergeant Joseph White ("White") was an officer, employee, and agent of Defendant The City of New York.

23. At all times relevant herein, Defendant White was acting within the scope of his employment with Defendant The City of New York.

24. At all times relevant herein, Defendant White was acting under color of state law.

25. Defendant White is sued in his individual and official capacities.

26. At all times relevant herein, Defendant Police Officer Giancarlo Alia ("Alia") was an officer, employee, and agent of Defendant The City of New York.

27. At all times relevant herein, Defendant Alia was acting within the scope of his employment with Defendant The City of New York.

28. At all times relevant herein, Defendant Alia was acting under color of state law.

29. Defendant Alia is sued in his individual and official capacities.

30. At all times relevant herein, Defendant Police Officer Sherif Baksh ("Baksh") was an officer, employee, and agent of Defendant The City of New York.

31. At all times relevant herein, Defendant Baksh was acting within the scope of his employment with Defendant The City of New York.

32. At all times relevant herein, Defendant Baksh was acting under color of state law.

33. Defendant Baksh is sued in his individual and official capacities.

34. At all times relevant herein, Defendant Police Officer Jonathan Wally ("Wally") was an officer, employee, and agent of Defendant The City of New York.

35. At all times relevant herein, Defendant Wally was acting within the scope of his employment with Defendant The City of New York.

36. At all times relevant herein, Defendant Wally was acting under color of state law.

37. Defendant Wally is sued in his individual and official capacities.

38. At all times relevant herein, Defendant Police Officer Frankie Cruz ("Cruz") was an officer, employee, and agent of Defendant The City of New York.

39. At all times relevant herein, Defendant Cruz was acting within the scope of his employment with Defendant The City of New York.

40. At all times relevant herein, Defendant Cruz was acting under color of state law.

41. Defendant Cruz is sued in his individual and official capacities.

42. At all times relevant herein, Defendant Police Officer Marcos Gonzalez ("Gonzalez") was an officer, employee, and agent of Defendant The City of New York.

43. At all times relevant herein, Defendant Gonzalez was acting within the scope of his employment with Defendant The City of New York.

44. At all times relevant herein, Defendant Gonzalez was acting under color of state law.

45.     Defendant Gonzalez is sued in his individual and official capacities.

46.     At all times relevant herein, Defendant Sergeant German Garcia ("Garcia") was an officer, employee, and agent of Defendant The City of New York.

47.     At all times relevant herein, Defendant Garcia was acting within the scope of his employment with Defendant The City of New York.

48.     At all times relevant herein, Defendant Garcia was acting under color of state law.

49.     Defendant Garcia is sued in his individual and official capacities.

## STATEMENT OF FACTS

50.     At approximately 12:30 a.m. on February 13, 2010, Mr. Tong was lawfully present outside the Ambar Room, located at 3795 10th Avenue, New York, New York.

51.     Police were present at the location, and a crowd had formed near the Ambar Room.

52.     Police directed the crowd to move away from the Ambar Room.

53.     As Mr. Tong walked away from the Ambar Room, Defendant Checo slammed into him from behind and forced him onto a vehicle.

54.     Mr. Tong attempted to turn around to see who it was that had done this to him, Defendant Checo punched Mr. Tong once in the face.

55.     Defendant Checo placed handcuffs on Mr. Tong.

56.     Mr. Tong had done nothing that would have given Defendant Checo probable cause to arrest him.

57.     Mr. Tong had done nothing that would have given Defendant Checo the right to use any level of force against Mr. Tong.

58. Mr. Tong attempted to turn around again to find out why this was happening to him, and Defendant Checo punched Mr. Tong a second time, splitting open the skin above Mr. Tong's right eye and damaging Mr. Tong's right eye.

59. Mr. Tong had done nothing that would have given Defendant Checo the right to use any level of force against Mr. Tong.

60. Defendant Checo pushed Mr. Tong off the car and onto the ground.

61. Mr. Tong was transported from the Ambar Room to New York Presbyterian Hospital.

62. During the ride, Defendant Checo laughed at Mr. Tong.

63. At New York Presbyterian, Mr. Tong received stitches to the skin above his right eye.

64. Thereafter, Defendant Checo transported Mr. Tong to the 34th Precinct.

65. The individual defendants spoke with the New York County District Attorneys' Office (NYCDAO), individually and collectively lying to the NYCDAO that Mr. Tong had violated New York Penal Law §§ 205.30 and 240.20.

66. Based on these fabricated allegations, the NYCDAO forwarded to the individual defendants a Criminal Court Complaint.

67. The Criminal Court Complaint was reviewed and then signed by the individual defendants.

68. The Criminal Court Complaint was then forwarded by the individual defendants to the NYCDAO.

69. At some point, Mr. Tong was transported to Manhattan Central Booking ("MCB").

70. MCB would not allow Mr. Tong in because of errors in his paperwork.

71. Mr. Tong was transported back to the 34th Precinct.

72. Mr. Tong was handcuffed to a pole next to the Sergeant's desk at the 34th Precinct.

73. Several hours later, Mr. Tong was again transported to MCB.

74. At some point after arriving at MCB, Mr. Tong was arraigned on one count of New York Penal Law § 205.30 and one count of New York Penal Law §240.20.

75. Mr Tong was prosecuted until the charges were dismissed against him in his favor.

76. After being released from custody, Mr. Tong was treated for injuries to his right eye and found to have permanent damage to his right eye.

77. As a result of these injuries, Mr. Tong has permanent blurriness in his right eye.

## FIRST CAUSE OF ACTION
### *42 U.S.C. § 1983*

78. Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

79. Defendants, by their conduct toward plaintiff as alleged herein, violated Plaintiff's rights guaranteed by 42 U.S.C. § 1983, the Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States.

80. As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages herein alleged.

## SECOND CAUSE OF ACTION

*Unlawful Stop and Search*

81. Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

82. Defendants violated the Fourth and Fourteenth Amendments because they stopped and searched Plaintiff without reasonable suspicion.

83. As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages herein alleged.

### THIRD CAUSE OF ACTION
*False Arrest*

84. Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

85. Defendants violated the Fourth and Fourteenth Amendments because they arrested Plaintiff without probable cause.

86. As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages herein alleged.

### FOURTH CAUSE OF ACTION
*Excessive Force*

87. Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

88. Defendants violated the Fourth and Fourteenth Amendments because they used unreasonable force on Plaintiff.

89. As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages herein alleged.

### FIFTH CAUSE OF ACTION
*Denial of Substantive Due Process*

90. Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

91. The individual defendants created false evidence against Plaintiff.

92. The individual defendants forwarded false evidence to prosecutors in the New York County District Attorney's Office.

93. In creating false evidence against Plaintiff, and in forwarding false evidence to prosecutors, the individual defendants violated Plaintiff's right to substantive due process under the Due Process Clause of the Fifth and Fourteenth Amendments of the Constitution of the United States.

94. As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages herein alleged.

### SIXTH CAUSE OF ACTION
*Malicious Abuse of Process*

95. Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

96. The individual defendants issued legal process to place Plaintiff under arrest.

97. The individual defendants arrested plaintiff in order to obtain collateral objectives outside the legitimate ends of the legal process, to wit, to cover up their unlawful stop, search, and assault of him.

98. The individual defendants pursued these collateral objectives after issuance of legal process by, *inter alia*, forwarding false evidence to the New York County District Attorney's Office and continuing to participate in the prosecution of the Plaintiff.

99. The individual defendants acted with intent to do harm to Plaintiff without excuse or justification.

100. As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages herein alleged.

### SEVENTH CAUSE OF ACTION

*Malicious Prosecution*

101. Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

102. The individual defendants initiated the criminal proceedings against Plaintiff by issuing legal process against him.

103. The individual defendants lacked probable cause to commence the criminal proceedings against Plaintiff.

104. The individual defendants' actions were motivated by actual malice.

105. The criminal proceeding against Plaintiff was terminated in Plaintiff's favor.

106. As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages herein alleged.

## EIGHTH CAUSE OF ACTION
*Failure to Intervene*

107. Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

108. Those defendants that were present but did not actively participate in the aforementioned unlawful conduct observed such conduct; had an opportunity to prevent such conduct; had a duty to intervene and prevent such conduct; and failed to intervene.

109. Accordingly, the defendants who failed to intervene violated the Fourth, Fifth, and Fourteenth Amendments of the Constitution of the United States.

110. As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages herein alleged.

## NINTH CAUSE OF ACTION
*Conspiracy under 42 U.S.C. § 1983*

111. Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

112. The Defendants jointly participated in the deprivation of Plaintiff's constitutional rights as set forth herein.

113. The Defendants conspired in the deprivation of Plaintiff's constitutional rights by collectively lying about Plaintiff's actions and conduct, and intentionally withholding and/or destroying exculpatory evidence in order to support the Defendants' fabricated version of the events.

114. As a result of the Defendants' malicious efforts to damage Plaintiff, Plaintiff's liberty was restricted, he was restrained, injured while in custody, subjected to handcuffing, and, among other things, falsely arrested and prosecuted.

115. As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages herein alleged.

### TENTH CAUSE OF ACTION
*Monell*

116. Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

117. This is not an isolated incident. Defendant The City of New York, through its policies, customs, and practices, directly caused the constitutional violations suffered by Plaintiff.

118. Defendant The City of New York, through the NYPD, has had, and still has, hiring practices that it knows will lead to the hiring of police officers lacking the intellectual capacity and moral fortitude to discharge their duties in accordance with the Constitution of the United States and is indifferent to the consequences.

119. Defendant The City of New York, through the NYPD, has a *de facto* quota policy that encourages unlawful stops, unlawful searches, false arrests, the fabrication of evidence, and perjury.

120. This quota policy requires that police officers, including the individual defendants named herein, make a certain number of arrests and/or write a certain number of summonses and desk appearance tickets within an allocated time period.

121. Officers that meet the required number of arrests, summonses, and desk appearance tickets are classified as active officers.

122. Officers that do not meet the required number of arrests, summonses, and desk appearance tickets are classified as inactive officers.

123. Active officers are given promotion opportunities that are not afforded to inactive officers.

124. Active officers are given overtime opportunities, such as security at parades, etc., that are not afforded to inactive officers.

125. The quota policy does not differentiate between arrests, summonses, and desk appearance that are supported by probable cause and ones that are not.

126. Defendant The City of New York, through the NYPD, does nothing to ensure that officers, in trying to fulfill this quota policy, are making arrests and issuing summonses and desk appearance tickets lawfully. There are no post-arrest investigations that are performed, and no policies in place that would prevent abuse of this policy, such as is demonstrated in the instant case.

127. Defendant The City of New York, through the NYPD, does nothing to determine the outcome of the charges levied against arrestees in order to properly counsel officers as to the lawfulness of their arrests/issuance of summonses and desk appearance tickets.

128. The failure of Defendant The City of New York to, *inter alia*, take these steps encourages, *inter alia*, unlawful stops, unlawful searches, false arrests, the fabrication of evidence, and perjury, in that the quota policy provides, *inter alia*, career and monetary incentives to officers, including the individual defendants herein.

129. Defendant The City of New York, through the NYPD, has a *de facto* overtime policy that encourages and incentivizes unlawful stops, unlawful searches, false arrests, the fabrication of evidence, and perjury.

130. Defendant The City of New York, through the NYPD, provides officers, including the individual defendants herein, with overtime opportunities when arrests are made, or summonses and desk appearance tickets are issued.

131. Upon making an arrest or issuing summons or desk appearance ticket, an arresting officer submits a request for overtime to his commanding officer.

132. These requests are essentially rubberstamped, with commanding officers performing no investigation into the circumstances of the arrest.

133. Defendant The City of New York, through the NYPD, does not perform any post-arrest investigation and there are no policies in place to prevent abuse of this overtime policy.

134. As a result of this overtime policy, officers, including the individual officers named herein, abuse this overtime policy, making baseless arrests and wrongfully issuing

summonses and desk appearance tickets to substantially supplement their income through overtime pay.

135.   Defendant The City of New York, at all relevant times, was aware that the individual defendants routinely committed constitutional violations such as those at issue here and has failed to change its policies, practices, and customs to stop this behavior.

136.   Defendant The City of New York, at all relevant times, was aware that the individual defendants are unfit officers who have previously committed the acts alleged herein and/or have a propensity for unconstitutional conduct.

137.   These policies, practices, and customs were the moving force behind Plaintiff's injuries.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests judgment against Defendants as follows:

(a)   Compensatory damages against all defendants, jointly and severally;

(b)   Punitive damages against the individual defendants, jointly and severally;

(c)   Reasonable attorney's fees and costs pursuant to 28 U.S.C. § 1988; and

(d)     Such other and further relief as this Court deems just and proper.

Dated: New York, New York
       February 6, 2013

*signature*

Gregory P. Mouton, Jr., Esq.
The Law Office of Gregory P. Mouton, Jr.
Attorney for Plaintiff
244 5th Avenue, Suite G247
New York, NY
Phone & Fax: (646) 706-7481
greg@moutonlawnyc.com